STARCREST TRUST, Appellant,

v.

Sam C. BERRY, Appellee.

No. 03–95–00264–CV.

Court of Appeals of Texas, Austin.

June 26, 1996.

Ross W. Ganann, New Braunfels, for Appellant.

Charles M. Jefferson, Smith, Barshop, Stoffer & Millsap, Inc., San Antonio, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

CARROLL, Chief Justice.

This is an appeal from a judgment granted in favor of appellee Sam C. Berry. Appellant Starcrest Trust ("Starcrest") brought suit against Berry, Thomas J. Smith, and the law firm of Smith, Barshop, Stoffer & Millsap to enjoin the non-judicial foreclosure of a deed of trust lien on certain property to which Starcrest held legal title in Comal

County. Starcrest additionally sought both a declaratory judgment that the deed of trust lien was invalid and damages for allegedly usurious interest charged in connection with the transaction. The trial court granted a temporary injunction preventing the foreclosure sale.

Berry then filed a counterclaim against Starcrest in which he alleged that he was owed $85,000 for funds that he advanced and sought to obtain a judicial foreclosure of his lien. The trial court granted summary judgment against Starcrest's usury claim as well as in favor of the defendants, Thomas J. Smith and Smith, Barshop, Stoffer & Millsap, Inc.

On February 3, 1995, the trial court entered a final judgment awarding Berry $85,000 in damages and $30,046 in attorneys' fees and further ordering a judicial foreclosure of the property. Starcrest appeals this judgment in twelve points of error.[1] We will affirm the judgment of the trial court.

## BACKGROUND

Appellee Sam Berry is the father-in-law of Ted Ballard, the trustee of appellant Starcrest. This, however, is one of the few facts that is not in dispute in this case. We will present the two distinct versions of the facts as alleged by the two parties in this case.

*Sam Berry's Version*

According to Sam Berry, Ted Ballard, who considered himself a sophisticated real estate businessman, needed money for one of his real estate ventures in late 1986. Believing that Ballard would pay him back, Berry followed Ballard's instructions and advanced $30,000 to Norman Jacobson to help Ballard save a property in Bexar County. Further, in May 1989, Berry advanced $5,000 to Ted and Barbara Ballard for family living expenses and to help pay for Ted Ballard's attorneys' fees.

In 1989, Ted Ballard came under federal indictment for making certain fraudulent statements and retained Gerald Goldstein, a well-known criminal defense attorney, to represent him. Goldstein, however, wanted a

$50,000 retainer fee. Ballard already owed Berry $35,000, and the two reached an understanding that Berry would make further advances to Goldstein for the benefit of Ted Ballard. So, in June 1989, Ballard told Berry that he was preparing an $85,000 note and deed of trust on the "one piece of property that they (Ballard's creditors) can't take away from me." Barbara Ballard prepared the note and the deed of trust, and Ted Ballard signed them. Ted Ballard, in his capacity as trustee of Starcrest, had the note and deed of trust executed on behalf of Starcrest despite the fact that the money was paid for his personal benefit, and the property owned by Starcrest was pledged because it was free and clear of liens. The deed of trust was recorded, but neither the note nor the deed of trust was sent to Berry. Barbara Ballard last saw the note on her desk in the spring of 1992 and was later told that Ted had destroyed the original note and deed of trust. Thus, Berry did not have either of the original two instruments in his possession.

After the execution of the note and the deed of trust, Berry made a series of additional advances for the benefit of the Ballards in 1989 and 1990. Some of these advances were made for personal expenses, while others were made directly to Goldstein. In total, Berry advanced $86,000 for the benefit of Ted Ballard, all of which was secured by the $85,000 note and deed of trust.

*Ted Ballard's Version*

According to the testimony of Ted Ballard and the convoluted facts as set forth in his brief, Berry loaned $30,000 to Country Enterprises, Inc., a corporation jointly owned by Ted and Barbara Ballard. In exchange for this $30,000, the Ballards set up a note and deed of trust in the amount of $348,000 "because it was not anticipated as to how much additional funding that company may need." Thus, even though the face of the note was $348,000, the amount actually advanced was $30,000. In July 1986, Country Enterprises, Inc. conveyed the property that was encumbered by the $348,000 deed of trust to Starcrest by warranty deed. Star-

---

1. Starcrest does not appeal from the summary judgment below which discharged Thomas J.

Smith and Smith, Barshop, Stoffer & Millsap, Inc.

crest took title to the property subject to the indebtedness but without assuming it.

In Starcrest's attempt to sell this encumbered property to Lash Publications, it became necessary to obtain a release of lien from Berry because the bank was not willing to fund enough money to clear a $348,000 mortgage in addition to a previous lien that was on the property.[2] On June 1, 1989, the release of lien was executed and served to extinguish all indebtedness related to the original $348,000 deed of trust. In obtaining the release of lien, Ted Ballard told Berry that he would execute a second interim deed of trust that could be recorded if the closing on the property did not occur or if for some reason Berry was not paid. Ballard further told Berry that he would attempt to have Lash Publications execute a new note and a new deed of trust so that Berry would be in the same position he was in before. Lash did in fact execute a new note and new deed of trust payable to Berry in the amount of $40,000, which according to Ballard, included the original $30,000 that Berry funded to Country Enterprises plus accrued interest. Ballard contends that the new note and deed of trust from Lash constituted a novation which extinguished the original $30,000 obligation. Lash Publications failed to pay Berry, but instead of foreclosing on the building, Ballard contends that Berry wrote the entire $40,000 off on his 1989 or 1990 tax return. Ballard contends that Berry, in his counterclaim, improperly asserts his rights to $85,000 under this second interim deed of trust.

According to Ballard, the second interim deed of trust in the amount of $85,000 was executed for the sole purpose of providing additional security for the payment of the indebtedness. The release of lien extinguished all indebtedness related to the $348,000 deed of trust. Ballard contends that there was no funding, new or old, to Starcrest, nor was there delivery to Berry of any note related to this second deed of trust. Thus, because there was no indebtedness related to this second $85,000 deed of trust

which is the subject of this suit, it was of no force and effect.

## DISCUSSION

In its first point of error, Starcrest asserts that the trial court erred in granting judgment in favor of Berry because the pleadings were not supported by the proof. Starcrest points out that Berry's counterclaim alleged that "Berry loaned $85,000 to Starcrest Trust." In his testimony at trial, however, Berry denied loaning Starcrest the $85,000 or any other amount of money, and Berry's attorney stipulated to the same. In fact, Berry specifically testified that he loaned $86,000 for the benefit of Ted Ballard with the expectation that Ballard would pay him back.

 Pleadings are sufficient if they give fair and adequate notice to the opposing party. *Acevedo v. Droemer*, 791 S.W.2d 668, 669 (Tex.App.—San Antonio 1990, no writ). A variance between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 687 S.W.2d 8, 11 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In the absence of special exceptions, a petition will be liberally construed in favor of the pleader. *Acevedo*, 791 S.W.2d at 670.

 There is no actual variance between the pleadings and the proof. The evidence at trial clearly indicated that Berry advanced $86,000 directly to, or for the benefit of, Ted Ballard, the trustee of Starcrest. The evidence further shows that, in exchange for this funding, an $85,000 note and deed of trust was prepared by Barbara Ballard at the direction of Ted Ballard and then signed by Ted Ballard in the name of Starcrest.

> If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented

---

**2.** It should be noted that the encumbered property referred to here by Ted Ballard is not the same encumbered property described by the $85,000

deed of trust and referred to by Berry in his version.

person would be bound if the signature were on a simple contract.

Tex.Bus. & Com.Code Ann. § 3.402(a) (Tex. UCC) (West Supp.1996).[3] Even if there is a technical variance between the pleadings and the proof, the pleadings gave fair and adequate notice to Starcrest and to Ted Ballard. Further, the variance was in no way substantial, misleading, or prejudicial. Accordingly, point of error one is overruled.

■ In its second point of error, Starcrest contends that the trial court erred in ruling that there was a lost note because Berry failed to prove the elements of a note as required by statute.

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

Act of June 14, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex.Gen.Laws 2343, 2440 (Tex.Bus. & Com.Code Ann. § 3.804, deleted by Acts of June 16, 1995, 74th Leg., R.S., ch. 921, § 1, 1995 Tex.Gen.Laws 4582, 4625). The terms that must be proved in order to recover on an instrument include: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note. *Bean v. Bluebonnet Savs. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App.—Dallas 1994, no writ); *see Bray v. Cadle Co.*, 880 S.W.2d 813, 817 (Tex.App.— Houston [14th Dist.] 1994, writ denied).

■ In this case, the evidence indicated that Berry loaned a total of $86,000 for Ted Ballard's benefit; $30,000 went to help save a real estate venture and the other $56,000 went to pay the Ballards's family expenses and Ted's attorneys' fees. The evidence shows that on June 2, 1989, Barbara Ballard, at Ted Ballard's direction, prepared the $85,000 note and deed of trust and that, according to Barbara, "absolutely it was signed" by Ted. Barbara testified that she and Ted "discussed, on more than one occasion, that we had prepared the note and deed of trust and Ted had signed it in order to secure [Sam Berry] and give him priority against our other creditors." Further, Barbara testified that, consistent with her usual practice, she held the two instruments for Sam Berry, her father. According to Berry, Barbara Ballard "had always taken care of the paperwork with Ted's instruction, and held the paperwork for me." The record also shows that Barbara Ballard last saw the note in the spring of 1992 in the brass box on her personal desk and that one of her neighbors, Patty Steel, told her that Ted Ballard had bragged of destroying the original note and deed of trust.[4] Thus, the evidence shows that Berry more than met the statutory requirements for bringing an action on a lost or destroyed note.

■ Starcrest also contends in its second point of error that the trial court erred in ruling the trust was liable for the debt of the trustee because there was no evidence of a valid written guaranty and because, as a matter of law, a trust cannot guarantee the debt of the trustee. A guaranty, however, creates a secondary obligation under which a guarantor promises to be responsible for the debt of another. *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 605 (Tex.App.— Houston [14th Dist.] 1993, writ denied). The guarantor promises to perform an act of the same kind and content as another is contractually bound to perform in the event that the primary obligor fails to perform. *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex.App.—Houston [1st

---

3. The UCC defines "person" to include an individual or an organization. Tex.Bus. & Com. Code Ann. § 1.201(30) (West 1994). "Organization" is defined to include trusts. *Id.* § 1.201(28).

4. Although Starcrest complains that the testimony concerning Ted Ballard's destruction of the note was hearsay, Starcrest did not object to its admission at trial. Assuming without deciding that the testimony was not an admission by a party-opponent or hearsay subject to one of the many exceptions, we note that even "[i]nadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Tex.R.Civ.Evid. 802.

Dist.] 1992, writ denied). As discussed above, Ted Ballard obligated Starcrest by instructing Barbara Ballard to execute and then by signing the $85,000 note and deed of trust in his capacity as trustee for Starcrest. *See* Tex.Bus. & Com.Code Ann. § 3.402(a) (Tex.UCC) (West Supp.1996). Thus, Starcrest was the primary obligor, rather than the guarantor, under the note and deed of trust in question. Accordingly, point of error two is overruled.

■ In its third point of error, Starcrest asserts that the trial court erred in overruling its First Motion to Strike Counterclaim because Berry failed to timely file his counterclaim. For purposes of this point of error only, Starcrest concedes the existence of an $85,000 note and deed of trust executed on June 2, 1989. Starcrest initially filed suit against Berry on May 28, 1993. Berry filed his original answer on June 18, 1993 and his counterclaim on September 8, 1993. Starcrest asserts that, because the applicable four-year statute of limitations expired on June 1, 1993, Berry's counterclaim was not timely filed. Starcrest also argues that, even under the statutory extension found in section 16.069 of the Texas Civil Practice and Remedies Code[5], Berry's counterclaim was late because it was filed on September 8, 1993, well beyond the July 19, 1993 extension date.

On June 2, 1993, the trial court entered an agreed temporary restraining order which barred Berry from holding a scheduled foreclosure sale of Starcrest's Comal County property. In the agreed order, both parties stipulated that the statute of limitations was tolled as of May 28, 1993 until further order of the court. At the temporary injunction hearing on June 14, 1993, the court granted Starcrest's petition for temporary injunction and set the case for a jury trial to be held on September 27, 1993. The injunction itself made no mention of tolling the limitations period. However, the statement of facts from the injunction hearing, which was presented to this Court as part of the record,

showed that counsel for Berry specifically asked the trial court whether the limitations period would continue to be tolled as it was in the temporary restraining order and that the trial court ordered that it would be so tolled.

Parties may agree to waive the statute of limitations either before or after the expiration of the prescribed time limit. *Duncan v. Lisenby,* 912 S.W.2d 857, 858 (Tex.App.—Houston [14th Dist.] 1995, no writ h.); *American Alloy Steel, Inc. v. Armco, Inc.,* 777 S.W.2d 173, 177 (Tex.App.—Houston [14th Dist.] 1989, no writ). The agreement, however, must be specific and for a pre-determined length of time. *Duncan,* 912 S.W.2d at 859; *American Alloy,* 777 S.W.2d at 177.

The parties in this case stipulated to the tolling of the limitations period in the agreed temporary restraining order, which was effective for fourteen days when the hearing on the temporary injunction took place. Then, in granting Starcrest's petition for temporary injunction, the record shows that the trial court set a date for trial and further tolled the limitations period. Thus, because the statute of limitations was tolled, Berry's counterclaim was timely filed and the trial court did not err in overruling Starcrest's First Motion to Strike Counterclaim. We overrule point of error three.

■ In its fourth and fifth points of error, Starcrest contends that the trial court erred in engrafting language onto the deed of trust and the release of lien to support its judgment because a court must strictly interpret contracts and cannot read into a contract that which is not there. "Generally, a deed of trust is a mortgage with a power to sell on default." *Successors to the Interest of Rea–Glass, Inc. v. Allied Corp.,* 704 S.W.2d 387, 389 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). "A mortgage is governed by the same rules of interpretation which apply to contracts." *Sonny Arnold, Inc. v. Sentry Savs. Ass'n,* 633 S.W.2d 811, 815

---

5. The extension found in section 16.069 provides that a counterclaim arising out of the same transaction or occurrence that is the basis of an action may be filed up to thirty days after the date on which the party's answer is due even though as a separate action the counterclaim would otherwise be barred by limitation on the date the party's answer is required. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.069 (West 1986).

(Tex.1982). Thus, the same rules of interpretation that apply to contracts also apply to a deed of trust. *Alkas v. United Savs. Ass'n*, 672 S.W.2d 852, 858 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Further, "[t]he note and deed of trust on ... property should be construed together and effectively regarded as one instrument." *Chapa v. Herbster*, 653 S.W.2d 594, 600 (Tex.App.—Tyler 1983, no writ). Issues of contract interpretation are determinable as a matter of law. *Fisk Elec. Co. v. Constructors & Assocs.*, 888 S.W.2d 813, 814 (Tex.1994).

In our discussion of point of error two above, we noted that Berry, in meeting the statutory requirements for bringing an action on a lost note, was able to prove the terms of the lost $85,000 note. The first page of the deed of trust, onto which Starcrest alleges the trial court engrafted language, states that "[t]his conveyance [of Starcrest's Comal County property], however, is made in TRUST to secure payment of one promissory note of even date herewith in the principal sum of EIGHTY FIVE THOUSAND AND 00/100 Dollars ($85,000) executed by Grantors [Starcrest Trust], payable to the order of Sam C. Berry...." Construing the lost note and the deed of trust together, it is clear that Ted Ballard, as trustee for Starcrest, executed the deed of trust in question as security for the lost $85,000 note.

Starcrest points to the language on the last page of the deed of trust which states that this $85,000 deed of trust, made payable to Berry, is given as additional security for the payment of a $348,000 note dated August 11, 1986. Starcrest argues that Berry, as holder and owner of the $348,000 note, signed a release of lien. According to Starcrest, this release of lien released the $85,000 lien and all other liens securing the $348,000 indebtedness. We disagree.

The release of lien was executed on June 1, 1989. The $85,000 note and deed of trust were executed on June 2, 1989. The release of lien could not, therefore, have released Starcrest from any of its obligations under the later-executed note and deed of trust. We note the reference in the $85,000 deed of trust concerning its creation as additional security for the $348,000 indebtedness owed to Berry. However, we do not see any conflict between this provision and the remainder of the deed of trust. Construing both instruments together, we find Starcrest is obligated to Berry under the lost $85,000 note and deed of trust. The release of lien does not affect this obligation. Accordingly, we overrule points of error four and five.

In its sixth and seventh points of error, Starcrest challenges the legal sufficiency of the evidence supporting certain of the trial court's findings of fact. Specifically, Starcrest challenges these findings of fact:

2. Neither Ballard nor the Starcrest Trust has ever made any payments on the $85,000 loan to Berry. No transaction with Lash Publications, Inc. has ever purported to have any effect on the $85,000 loan. The principal balance outstanding on the loan is still $85,000.

5. Ballard's execution of the Deed of Trust, pledging Trust property to secure the $85,000 loan made to him, manifested his intent to revoke the Starcrest Trust. Thereafter, the Starcrest Trust continued to be the record owner of the Property (legal title), but equitable title to the Property reverted back to Ballard.

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In determining a "no evidence" point of error, we must only consider the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 Tex.L.Rev. 515 (1991). If there is more than a scintilla of evidence to support the findings, the "no evidence" challenge cannot be sus-

tained. *Catalina*, 881 S.W.2d at 297; *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

■■■ In its sixth point of error, Starcrest contends that the trial court erred in finding that Ted Ballard, as trustee, intended to revoke Starcrest Trust because there was no evidence of a written revocation as statutorily required. Starcrest argues that the $85,000 deed of trust does not express an intent to revoke Starcrest Trust and, therefore, does not satisfy the requirement of a written revocation as provided in section 112.051 of the Texas Property Code.

Section 112.051 states in pertinent part:

(a) A settlor may revoke the trust unless it is irrevocable by the express terms of the instrument creating it or of an instrument modifying it.

. . .

(c) If the trust was created by a written instrument, a revocation, modification, or amendment of the trust must be in writing.

Tex.Prop.Code Ann. § 112.051(a), (c) (West 1995).

In this case, Ted Ballard was the settlor as well as the trustee of Starcrest, a revocable trust. Ted Ballard, in his capacity as trustee of Starcrest and through his wife, Barbara Ballard, executed an $85,000 note and deed of trust for the benefit of Sam Berry on June 2, 1989. In this deed of trust, Ted Ballard conveyed Starcrest's principal asset to secure a loan made by Berry for Ted Ballard's personal benefit.

A trustee may not lend trust funds to himself or to an affiliate. Tex.Prop.Code Ann. § 113.052(a)(1) (West 1995). Thus, Ballard's actions must have been taken in his capacity as settlor of Starcrest.

Where no procedure for termination is stated in the trust instrument, any reasonable method may be used.

The instrument claimed to be in exercise of the power of revocation must show an intent to use the power, although it need not necessarily refer expressly to the power.

Revocation may be held to have occurred by means of a conveyance by the settlor to

a third person that covers the trust property.

George Gleason Bogert, *The Law of Trusts and Trustees* § 1001 (rev.2d ed. 1983). Disregarding all evidence and inferences contrary to the finding of the trial court, we hold that some evidence exists to support the finding of the trial court. Point of error six is overruled.

In its seventh point of error, Starcrest asserts that the trial court erred when it failed to rule that the original obligation that formed the basis of the transaction was novated and discharged because the certified deed records, testimony and evidence before the court prove, as a matter of law, that novation occurred.

■■■ Novation must be affirmatively pled. *See* Tex.R.Civ.P. 94; *Forest Lane Porsche Audi Assocs. v. G & K Servs., Inc.*, 717 S.W.2d 470, 474 (Tex.App.—Fort Worth 1986, no writ). The burden of proving a novation is on the party asserting it. *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 607 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Thus, an appellant attacking the legal sufficiency of an adverse finding to an issue on which appellant had the burden of proof must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Harris County v. Bruyneel*, 787 S.W.2d 92, 95 (Tex.App.—Houston [14th Dist.] 1990, no writ). A "matter of law" point is generally treated as a "no evidence" point. *Id.* If there is any evidence to support the finding, the point of error must be overruled. But, if there is no evidence to support the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* (citing *Holley v. Watts*, 629 S.W.2d 694, 696–97 (Tex.1982)).

■■■ In this case, testimony of Berry and Barbara Ballard indicate that the $85,000 note and deed of trust were executed on June 2, 1989 and represented actual money that Berry had already advanced or agreed to advance for the benefit of Ted Ballard. Berry testified that he never loaned $30,000 to Country Enterprises and that the purport-

ed $348,000 lien representing that loan was bogus. Further, Berry testified that, because the $348,000 lien was bogus, he signed a release of that lien. This release of lien executed on June 1, 1989 did not have any effect on the $85,000 note and deed of trust, which were not executed until June 2, 1989. Berry also testified that Ted Ballard told him that he would attempt to get some money from Lash Publications, but that this was not in lieu of any existing debts owed by Ballard to Berry. Because some evidence does exist to support the trial court's finding, we overrule point of error seven.

 In point of error nine, Starcrest contends that the trial court erred by failing to make additional findings of fact and conclusions of law because the court's original findings and conclusions were based on erroneous evidence and incorrect interpretations of law. Additional findings of fact and conclusions of law are not required to be made by the trial court where, as here, they are directly contrary to, or inconsistent with, the original findings and conclusions of the trial court. See *Strickland v. Coleman*, 824 S.W.2d 188, 193 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Central Power & Light Co. v. Bullock*, 696 S.W.2d 30, 33 (Tex.App.—Austin 1984, no writ). Further, there is no showing that the trial court's refusal to make the requested additional findings and conclusions prevented Starcrest from adequately presenting its case on appeal. See *Tamez v. Tamez*, 822 S.W.2d 688, 693 (Tex.App.—Corpus Christi 1991, writ denied); *Little v. Linder*, 651 S.W.2d 895, 901 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). Point of error nine is overruled.

In its eighth point of error, Starcrest argues that the trial court erred when it denied Starcrest's motions and granted Berry's motion for partial summary judgment concerning usury because the evidence showed that Berry's attempted foreclosure constituted an overcharge in violation of the applicable statutory authority.

 The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gul-*

*benkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). A defendant moving for summary judgment must establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.*, 890 S.W.2d 459, 463 (Tex.App.—Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex.1995); *Valles v. Texas Comm'n on Jail Standards*, 845 S.W.2d 284, 286 (Tex.App.—Austin 1992, writ denied). The plaintiff, as movant in a summary judgment proceeding, has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Wilmer*, 890 S.W.2d at 463. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the nonmovant. *Nixon*, 690 S.W.2d at 548–49. We indulge in every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 549.

 The essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

 In this case, Starcrest makes admissions in the summary judgment proof that the $85,000 deed of trust in dispute here was never tendered, that there was never any funding from Berry to Starcrest, and that there is no $85,000 note that corresponds to the deed of trust. Without admitting to the existence of a loan from Berry to Starcrest (the first element of usury) or to the existence of Starcrest's obligation to repay anything to Berry (the second element of usury), Starcrest is hard-pressed to bring a suit for usury against Berry. Because of these admissions, Starcrest failed to prove all of the elements of usury as a matter of law, and Berry was easily able to establish that there is no genuine issue of material fact as to one or more of the essential elements of usury. The trial court acted appropriately in granting defendant's (Berry's) motion for partial

summary judgment and in denying plaintiff's (Starcrest's) motions for partial summary judgment. Point of error eight is overruled.

In its tenth point of error, Starcrest contends that the trial court erred in allowing a party to take the benefit of a judgment and then argue alternate theories of liability to obtain another judgment in conflict with the original judgment because of the doctrine of judicial estoppel.

 A party is judicially estopped in a subsequent proceeding by having alleged or admitted in pleadings, in a prior proceeding under oath, a position contrary to the assertion sought to be made. *Wells v. Kansas Univ. Endowment Ass'n,* 825 S.W.2d 483, 488 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Estate of Devitt,* 758 S.W.2d 601, 603 (Tex.App.—Amarillo 1988, writ denied). "Judicial estoppel is not established in the absence of any evidence that the averment, on which a claim of estoppel is based, was made in the course of other judicial proceedings." *Wells,* 825 S.W.2d at 488; *see Estate of Devitt,* 758 S.W.2d at 603.

 In this case, Starcrest mischaracterizes the argument made by Berry in successfully defending against Starcrest's motion for partial summary judgment. Berry did not argue that Starcrest had no absolute obligation to repay the $85,000 to Berry. As discussed in point of error eight, Berry merely pointed out that Starcrest could not prove a usury cause of action as a matter of law while, at the same time, maintaining a position counter to the necessary elements of that cause of action. Further, the hearing on Starcrest's motion for partial summary judgment occurred as part of this same judicial proceeding, rather than as part of some prior proceedings. Because judicial estoppel has not been established in this case, point of error ten is overruled.

 In point of error eleven, Starcrest contends that the trial court lacked jurisdiction to grant judgment against Starcrest because the minor beneficiaries were not served, noticed, or afforded ad litem representation. As a general rule, both the trustee and the beneficiaries should be made parties to suits involving trust property.

*Citizens State Bank v. Bowles,* 663 S.W.2d 845, 848 (Tex.App.—Houston [14th Dist.] 1983, writ dism'd). This rule, however, is subject to many exceptions. *Id.*

> In actions adverse to a trust, if the dispute involves no conflict between the trustee and the beneficiaries, or between the beneficiaries themselves, a trustee may sue or defend in the trustee's own name when, either by express grant or necessary implication, that power is vested in the trustee. In addition, in the absence of a conflict of interest, or of a pleading that they are inadequately represented, the beneficiaries who did not participate in the trial are not considered necessary parties to the case.

*Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 833 (Tex.App.—Amarillo 1993, no writ).

 In this case, Ted Ballard provided an extremely vigorous defense to Berry's counterclaim at trial, taking a position throughout that was consistent with that of the beneficiaries. For example, Ballard attempted to prove, however unsuccessfully, that: (1) no loan was ever made from Starcrest to Berry; (2) no note ever existed to evidence a loan from Starcrest to Berry; (3) the $85,000 deed of trust was executed on an interim basis in an attempt to secure Berry between the time he released a $348,000 lien from Country Enterprises and replaced it with a new $40,000 lien from Lash Publications; and (4) the $40,000 Lash lien was taken by Berry in place of all earlier liens in his name. Because the interests of the beneficiaries, Nickolas and Casey Ballard, were not clearly adverse or antagonistic to that of Ted Ballard, no conflict of interest existed in this case, and the beneficiaries were not necessary parties to the action. *See Wohler v. La Buena Vida in Western Hills, Inc.,* 855 S.W.2d 891, 893 (Tex.App.—Fort Worth 1993, no writ) (citing *Mason v. Mason,* 366 S.W.2d 552, 554 (Tex.1963)). Further, the record shows that the beneficiaries did have notice of the suit. In Ted Ballard's testimony, he stated that "they're very aware of this litigation, they're very dismayed and sad about the litigation, and they have asked me to fight this as hard as I can to protect their

interests, and that's what I have tried to do." Point of error eleven is overruled.

In point of error twelve, Starcrest asserts that the trial court committed plain error in entering judgment against Starcrest because a trust is not a legal entity and cannot be sued. Starcrest did not raise this argument at the trial court, and we may not reverse the judgment of the trial court in the absence of properly assigned error. *See Orchid Software, Inc. v. Prentice–Hall, Inc.,* 804 S.W.2d 208, 211 (Tex.App.—Austin 1991, writ denied). We will liberally construe Starcrest's "plain error" argument to be an assertion that the trial court committed fundamental error. *See Runyan v. Mullins,* 864 S.W.2d 785, 788 (Tex.App.—Fort Worth 1993, writ denied). "In order to have fundamental error, the record must show that the trial court lacked jurisdiction or that the public interest, as declared in the statutes or Constitution of Texas, is directly and adversely affected." *Kirby v. Cruce,* 688 S.W.2d 161, 168 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

In this case, the record does not show fundamental error. On its face, Starcrest's point of error challenges a trust's capacity to be sued because a trust is not a legal entity. In effect, Starcrest is really challenging a defect in Berry's pleading of his counterclaim. A court of appeals cannot elevate a pleading defect to the status of fundamental error. *Department of Human Resources v. Wininger,* 657 S.W.2d 783, 784 (Tex.1983). Even assuming Starcrest was complaining of more than a pleading defect, no fundamental error exists. As discussed above, Ted Ballard revoked Starcrest Trust by pledging the trust's principal asset in the $85,000 deed of trust. Further, Ballard initially brought suit against Berry, but did so solely in the name of Starcrest Trust. Thus, in his counterclaim, Berry only named Starcrest. Berry's pleadings sufficiently gave fair and adequate notice of his counterclaim to Ted Ballard despite any alleged variance between his pleadings and the proof at trial, and Ballard actively participated in all aspects of the proceedings below. Accordingly, point of error twelve is overruled.

## RULE 84 SANCTIONS

After careful deliberation, we consider and award sanctions against appellant by our own motion. *See* Tex.R.App.P. 84. We find this appeal was taken for delay and without sufficient cause. Appellant's brief was at best confusing and at worst misleading and served no more than to cloud the straightforward issues of this case. Although we cannot say all of the discrepancies between the record and appellant's brief were purposeful, they exceeded acceptable bounds and showed an absence of good faith on appellant's part.

Further, this case went to mediation and settled while it was pending on appeal but before submission. Appellant, however, refused to comply with the terms of the mediated settlement to which he agreed for reasons that were unconvincing if not unbelievable.

It is with reluctance and caution that we exercise our discretion to award sanctions in this case. *See Casteel–Diebolt v. Diebolt,* 912 S.W.2d 302, 306 (Tex.App.—Houston [14th Dist.] 1995, no writ h.). The purpose of Rule 84 is to shift part of an appellee's expense and burden in defending a frivolous appeal to the appellant. *Roever v. Roever,* 824 S.W.2d 674, 677 (Tex.App.—Dallas 1992, no writ); *Naydan v. Naydan,* 800 S.W.2d 637, 644 (Tex.App.—Dallas 1990, no writ). "This Court strongly believes that meritless litigation constitutes an unnecessary burden on both the parties and the courts." *Dolenz v. American Gen. Fire & Casualty Co.,* 798 S.W.2d 862, 865 (Tex.App.—Dallas 1990, writ denied). Accordingly under Rule 84, we assess damages against Starcrest and in favor of Berry in the amount of $10,000, which is less than ten percent of the trial court's monetary judgment against Starcrest.

## CONCLUSION

Because we have overruled Starcrest's twelve points of error, we affirm the judgment of the trial court.