TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00697-CV






Coastal Incineration Corporation, Appellant



v.



William H. Rodgers, Jr. d/b/a RPC Environmental, Appellee






FROM THE DISTRICT COURT OF JEFFERSON COUNTY, 60TH JUDICIAL DISTRICT


NO. B-0150441, HONORABLE GARY SANDERSON, JUDGE PRESIDING 







 Appellant Coastal Incineration Corporation and appellee William H. Rodgers, Jr.
d/b/a RPC Environmental both sought a declaratory judgment clarifying their rights under two
agreements concerning business equipment and real property related to an oil field waste-
incinerator site. Coastal wanted the agreements invalidated for lack of consideration and
requested an injunction requiring Rodgers to vacate the site. Rodgers counterclaimed and
requested that the court declare the agreements enforceable and confirm his right to remain on the
property. The trial court held that the agreements were valid and that appellee had the right to
occupy the property. On appeal Coastal asks us to reverse the trial court's judgment and remand
the cause because the relief exceeded the scope of the pleadings, the agreements were void for
lack of consideration, and the waiver of appellant's statute-of-limitations defense was ineffective. 
We will affirm the trial court's judgment.


BACKGROUND

 In October of 1990, Rodgers and Coastal entered into an agreement in which
Rodgers purchased Coastal's incineration equipment by assuming the debt Coastal owed on the
equipment. Rodgers also agreed to lease the property on which the equipment was located in
order to operate the incinerator; however, he was prevented from operating the incinerator
because the site was so polluted that the appropriate state agencies would not issue the necessary
permits. Meanwhile, Coastal had defaulted on the $700,000 owed to its lender for the real
property and equipment. Though the lender had a deed of trust on the property to secure the note,
it did not wish to foreclose on the polluted property because the estimated clean-up costs were in
excess of the property's value; the property had been designated a "superfund" site, apparently
as a result of operations by a previous tenant. Because of the extensive pollution, appellee was
able to purchase the $700,000 in notes on the property and equipment from Coastal's lender for
a mere $5,000 in November 1990. This left Rodgers as the note holder for all of appellant's land
and equipment debts. 

 Since Rodgers's purchase of the notes substantially changed the nature of their
relationship, the parties renegotiated the original agreement of sale in 1991. This resulted in two
new agreements--an amendment to the first agreement of sale and a real estate agreement. The
amendment to the agreement regarding the sale of equipment provides that Coastal shall receive
10% of any net income Rodgers receives from any business conducted on the site, 10% of any
rents he earns from leasing the equipment, and 10% of any sales proceeds or $75,000--whichever
is less--if Rodgers sells the equipment. The contract further provides that Rodgers may be released
from all obligations under the amended equipment agreement if he pays appellant $75,000. 

 In the real estate agreement, both parties confirm that the attached notes and deeds
of trust held by Rodgers are valid and enforceable. These notes and deeds of trust are
incorporated into the agreement, and both parties acknowledge that at the time of the agreement 
appellee had not declared Coastal to be in default on the notes. Though Rodgers did not purchase
the real property, the real estate agreement permits him to remain on and use the property without
any obligation to pay rent while he attempts to get the necessary permits. Rodgers is also
obligated to maintain the property in as good or better condition as he found it. In the event he
acquires title to the real property through foreclosure, Rodgers is obligated to pay Coastal 10%
of any rents received, as well as 10% of any sales proceeds or $75,000--whichever is less. 
Finally, appellee has a buy-out option similar to the one in the amended equipment agreement. 
Rodgers can be relieved of his obligations under the real estate agreement if he pays Coastal
$75,000.

 Despite cleanup efforts, Rodgers has not been able to begin operations. In 1993,
appellant ordered Rodgers to vacate the property, but Rodgers refused. Coastal then brought suit,
seeking an injunction to require appellee to vacate the site and a judgment declaring the 1991
agreements void for lack of consideration. The trial court declared the agreements valid and
enforceable. Coastal raises eight points of error on appeal. 




DISCUSSION

Enforceability of the Promissory Notes

 Coastal complains in the first two points of error that the portion of the judgment
declaring the promissory notes valid and enforceable is not supported by the pleadings and that
it was error to grant such relief. A party may not be granted relief in the absence of pleadings
to support that relief. Cunningham v. Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983); A.V.A.
Servs., Inc. v. Parts Indus. Corp., 949 S.W.2d 852, 854 (Tex. App.--Beaumont 1997, no writ). 
Appellant contends that because Rodgers's pleadings only sought a declaration of the parties'
rights under the contractual agreements, the portion of the court's judgment declaring the
promissory notes valid and enforceable was error.

 Coastal is correct that appellee's pleadings requested a declaratory judgment
defining the rights of the parties regarding the amendment and real estate agreement. However,
the promissory notes and deeds of trust are attached to the real estate agreement which explicitly
incorporates them in the section entitled "confirmation of promissory notes." In declaring
the notes and deeds of trust valid and enforceable, the trial court did exactly as Rodgers asked in
his counterclaim. It declared the real estate agreement enforceable in its entirety, including the
provision confirming the validity of the promissory notes. Since the parties explicitly agree in the
real estate agreement that the attached promissory notes are valid and enforceable, the trial court
did not expand the declaratory judgment beyond Rodgers's pleadings. We overrule points of error
one and two.


Adequacy of Consideration

 Appellant next complains that the court erred in holding the two agreements
enforceable because there was legally and factually insufficient evidence of consideration. Coastal
claims that it received absolutely nothing of value in return for its contractual promises and that
the agreements should be held void for lack of consideration.

 In reviewing a legal-sufficiency point, we consider only the evidence and inferences

tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. If there is more than a scintilla of evidence to support the questioned finding, the
challenge to legal sufficiency fails. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987); Emerson
v. Borland, 927 S.W.2d 709, 717 (Tex. App.--Austin), cert. denied, 118 S. Ct. 174 (1997). When
reviewing a challenge to factual sufficiency, we examine all the evidence and set aside the finding
only if it is so contrary to the great weight and preponderance of the evidence as to be clearly
wrong and unjust. See Poole v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Housing
Auth. of Crystal City v. Lopez, 955 S.W.2d 152, 159 (Tex. App.--Austin 1997, no writ).

 Before consideration will be deemed inadequate, it must be so grossly inadequate
as to shock the conscience and be tantamount to fraud. Wyndham v. Alexander, Weston &
Poehner, P.C., 887 S.W.2d 182, 184 (Tex. App.--Texarkana 1994, writ denied); Birdwell v.
Birdwell, 819 S.W.2d 223, 227-28 (Tex. App.--Fort Worth 1991, writ denied). A contract is
supported by sufficient consideration if it confers a benefit on the promisor or if it imposes a loss
or detriment on the promisee. Federal Sign v. Texas Southern Univ., 951 S.W.2d 401, 409 (Tex.
1997); Roark v. Stallworth Oil & Gas, 813 S.W.2d 492, 496 (Tex. 1991). The amended
equipment agreement provides several benefits to appellant, including (1) 10% of any net income
Rodgers receives from doing business on the site if he successfully cleans up the land and obtains
the permits necessary to begin operations, (2) 10% of any equipment rentals, (3) 10% of any sales
proceeds or $75,000--whichever is less--if any of the equipment is sold, and (4) $75,000 if Rodgers
decides not to fulfill his obligations under the contract. The amended equipment agreement also
asserts that the "avoidance and expense of litigation between the parties with reference to the
original agreement of sale" serves as "part of the consideration" for the amendment. Rodgers's
purchase of the notes substantially changed the relationship between the parties and rendered the
original agreement ambiguous and nearly impossible to perform. The avoidance of time-consuming disputes and costly litigation over the terms of the original agreement serves as valid
consideration for the amended agreement. See Brannon v. Lancaster Bros., 8 S.W.2d 726, 729
(Tex. Civ. App.--Fort Worth 1928, no writ) (avoidance of litigation is valid and sufficient
consideration for contract).

 The real estate agreement contains several provisions that benefit Coastal as well. 
In return for the right to use and occupy the property, Rodgers agrees to maintain the property
at his own expense in as good or better condition than he found it. This includes the trouble and
expense of curtailing any further pollution, cleaning up the property, and dealing with agencies
in order to get the permits necessary to conduct business. These commitments serve as valid
consideration for the real estate agreement since Rodgers assumed duties benefitting Coastal that
he otherwise had no legal obligation to perform. The real estate agreement also contains profit-sharing provisions benefitting Coastal that are similar to those included in the amended equipment
agreement. Rodgers promises to pay Coastal 10% of any rents he receives from the property if
it is acquired through foreclosure. Appellant also has the right to 10% of any proceeds from the
sale of the real property or $75,000--whichever is less. The only way Rodgers can be relieved of
these obligations is to pay Coastal $75,000. Further evidence of valid consideration for the real
estate agreement is provided by appellee's agreement to waive any previous defaults on the notes
by Coastal. Rodgers could have immediately accelerated the notes and foreclosed on the property. 
However, in return for appellant's consent to the terms of the agreement, Rodgers declined to do
so.

 As Coastal concedes, it executed the agreements in anticipation of the possible
proceeds it would receive from Rodgers's business profits. The contract makes it clear that
Coastal was well aware of the environmental condition of the site and knew the land's "uncertain
status" might delay or ultimately prevent any future business operations. This was a risk appellant
assumed under the terms of the agreement, and it cannot be heard to complain now that there was
no consideration because the plan did not work out favorably. After examining the evidence and
reasonable inferences which support the trial court's findings and disregarding all evidence and
inferences to the contrary, we hold that there is more than a scintilla of evidence supporting the
finding of sufficient consideration for both the amended equipment agreement and the real estate
agreement. Upon consideration of the entire record, we also hold that the finding of adequate
consideration is not so against the great weight and preponderance of the evidence as to be
manifestly unjust. Because the evidence is legally and factually sufficient to uphold a finding of
consideration, the trial court did not err in declaring both agreements valid and enforceable. We
overrule points of error three, four, seven, and eight.


Waiver of Statute of Limitations

 In the fifth point of error, Coastal argues that the trial court erred in finding the
deed of trust liens valid and enforceable because the provision extending the statute of limitations
for the notes was void and was not waived by agreement. Coastal complains that while parties
may waive a limitations defense for a definite period of time, this agreement waived the
limitations indefinitely, which voids the waiver. See Starcrest Trust v. Berry, 926 S.W.2d 343,
351 (Tex. App.--Austin 1996, no writ) (agreements to waive statute of limitations must be specific
and for a pre-determined amount of time). Coastal relies on the four-year statute of limitations
to foreclose on property after a note has been declared in default, arguing that the notes are not
enforceable because the statute has run. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004(a)(3),
16.035(a) (West 1986 & Supp. 1998). Before Rodgers acquired the $700,000 in notes, Coastal's
creditor FIMSA had declared the notes in default. However, both parties agreed in the amended
agreement that Rodgers had not recognized any default on the notes.

 We do not understand this to be a waiver of the statute of limitations as appellant
claims, but rather a waiver of its default on the loans. The promissory note provided that if
Coastal failed to make a payment on time, the entire debt would be immediately due at the option
of the lender. Since Rodgers was the new holder of the notes and had not declared those notes
in default, this option was not exercised. If a note payable in installments is secured by a real
property lien, as is the case here, the four-year statute of limitations does not begin to run until
the final installment is due or the lender accelerates the loan. See Tex. Civ. Prac. & Rem. Code
Ann. § 16.035(e) (West 1986 & Supp. 1998); see also Ocean Transport, Inc. v. Greycas, Inc.,
878 S.W.2d 256, 266 (Tex. App.--Corpus Christi 1994, no writ); Palmer v. Palmer, 831 S.W.2d
479, 480 (Tex. App.--Texarkana 1992, no writ). Because both parties agreed that Rodgers waived
any prior default and since the final installment was not yet due, there was no statute-of-limitations
defense available to Coastal because the four-year statute had not yet started to run. If the real
estate agreement had mentioned that the notes were in default but the parties intended to waive
the statute of limitations, they would have had to specify a certain period of time. See Starcrest,
926 S.W.2d at 351. However, where the parties merely waive holding a note in default--which
has many implications other than its effect on the statute of limitations--they are not required to
specify a certain duration. We overrule appellant's fifth point of error. 


Injunction

 Finally, we address whether the trial court erred in failing to grant an injunction
removing Rodgers from the property. Coastal contends that it has an unconditional right to force
appellee off the property because the contract merely granted a license "revocable by its own
terms" which states that upon 180 days' notice, Rodgers is required to vacate the site. We
disagree. When construing a contract, we read all the parts of the contract together in an effort
to harmonize and give effect to all the provisions of the contract so that none will be rendered
meaningless. See State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995);
Haddad v. Wood, 949 S.W.2d 438, 441 (Tex. App.--El Paso 1997, writ denied). 

 We first observe that the real estate agreement never mentions a "revocable
license." Instead, the contract gives Rodgers the right to remain on and use the property without
any obligation to pay rent. The provision Coastal directs our attention to requires Rodgers to
make reasonable efforts to obtain the permits required to allow business operations on the site and
to maintain the property in as good or better condition than he found it. The record provides
more than sufficient evidence that appellee fulfilled these duties. Only after spelling out these
obligations does the agreement mention any possible requirement to vacate the property. Even
if we disregard the language which blatantly contradicts the meaning appellant asserts, (1) we still
are convinced that the right to evict appellee was dependant upon Rodgers breaching the
contractual obligations that were set forth in the sentences preceding the clause concerning any
obligation to leave the site. Looking at the amended equipment agreement in its entirety, we do
not believe the parties meant for Coastal to possess an unconditional right to force Rodgers off
the property after giving him 180 days' notice. The agreement clearly gives Rodgers the right to
use the property rent-free as long as he attempts to obtain the permits required to begin operations
and maintains the site in as good or better position than he found it. The flawed language Coastal
refers to does not grant it the authority to revoke Rodgers's right to remain on the land absent a
breach by Rodgers. Since the trial court did not err when it denied Coastal's request for an
injunction requiring Rodgers to vacate the site, we overrule point of error six.


CONCLUSION

 Having overruled all of Coastal's points of error, we affirm the trial court's
declaratory judgment.



 


 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: July 30, 1998

Do Not Publish

1. Though Coastal claims that it had the right to demand that Rodgers vacate the property, the
contract says the purchaser (Rodgers) could give the seller (Coastal) written notice to vacate the
property.


e) (West 1986 & Supp. 1998); see also Ocean Transport, Inc. v. Greycas, Inc.,
878 S.W.2d 256, 266 (Tex. App.--Corpus Christi 1994, no writ); Palmer v. Palmer, 831 S.W.2d
479, 480 (Tex. App.--Texarkana 1992, no writ). Because both parties agreed that Rodgers waived
any prior default and since the final installment was not yet due, there was no statute-of-limitations
defense available to Coastal because the four-year statute had not yet started to run. If the real
estate agreement had mentioned that the notes were in default but the parties intended to waive
the statute of limitations, they would have had to specify a certain period of time. See Starcrest,
926 S.W.2d at 351. However, where the parties merely waive holding a note in default--which
has many implications other than its effect on the statute of limitations--they are not required to
specify a certain duration. We overrule appellant's fifth point of error. 


Injunction

 Finally, we address whether the trial court erred in failing to grant an injunction
removing Rodgers from the property. Coastal contends that it has an unconditional right to force
appellee off the property because the contract merely granted a license "revocable by its own
terms" which states that upon 180 days' notice, Rodgers is required to vacate the site. We
disagree. When construing a contract, we read all the parts of the contract together in an effort
to harmonize and give effect to all the provisions of the contract so that none will be rendered
meaningless. See State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995);
Haddad v. Wood, 949 S.W.2d 438, 441 (Tex. App.--El Paso 1997, writ denied). 

 We first observe that the real estate agreement never mentions a "revocable
license." Instead, the contract gives Rodgers the right to remain on and use the property without
any obligation to pay rent. The provision Coastal directs our attention to requires Rodgers to
make reasonable efforts to obtain the permits required to allow business operations on the site and
to maintain the property in as good or better condition than he found it. The record provides
more than sufficient evidence that appellee fulfilled these duties. Only after spelling out these
obligations does the agreement mention any possible requirement to vacate the property. Even
if we disregard the language which blatantly contradicts the meaning appellant asserts, (1) we still
are convinced that the right to evict appellee was dependant upon Rodgers breaching the
contractual obligations that were set forth in the sentences preceding the clause concerning any
obligation to leave the site. Looking at the amended equipment agreement in its entirety, we do
not believe the parties meant for Coastal to possess an unconditional right to force Rodgers off
the property after giving him 180 days' notice. The agreement clearly gives Rodgers the right to
use the property rent-free as long as he attempts to obtain the permits required to begin operations
and maintains the site in as good or better position than he found it. The flawed language Coastal
refers to does not grant it the authority to revoke Rodgers's right to remain on the land absent a
breach by Rodgers. Since the trial court did not err when it denied Coastal's request for an
injunction requiring Rodgers to vacate the site, we overrule point of error six.


CONCLUSION

 Having overruled all of Coastal's points of error, we affirm the trial court's
declaratory judgment.