Helen YTURRI, Appellant,

v.

Robert YTURRI et al., Appellees.

No. 15150.

Court of Civil Appeals of Texas, San Antonio.

May 23, 1973.

Rehearing Denied Jan. 30, 1974.

Pat Maloney, San Antonio, for appellant.

Huson, Clark & Thornton, San Antonio, for appellees.

CADENA, Justice.

Plaintiff, Helen Yturri, appeals from a summary judgment denying her prayer that defendants, Enedina Holland Yturri,

Robert Yturri and Edward Yturri, be removed as trustees of a testamentary trust created by the will of plaintiff's deceased father, Edward Howard Yturri. The defendant-trustee, Enedina Holland Yturri, is the surviving widow of the deceased and is the mother of plaintiff, while the other two trustees, Robert Yturri and Edward Yturri, are sons of the deceased and brothers of plaintiff. In addition, plaintiff named as defendants the other children of deceased, John Yturri, Mrs. Henrietta Yturri Ames, Evelyn Yturri Landry and Mary Alice Yturri Pena.

Paragraph 3 of decedent's will disposed of some real estate known as the Commerce Street Property in San Antonio. This paragraph created a trust in the event such property should be sold during the lifetime of the surviving widow, but, although such property was in fact sold, we are not here concerned with the provisions of this paragraph.

By paragraph 4 of the will, the remainder of the testator's estate was devised to his widow, Enedina, and his two sons, Robert and Edward, as trustees. The trustees were given full power of management, control and disposition of the estate, which consisted primarily of rental property and corporate stocks. The will directed that the income and profits realized from the corpus were to be used to pay all costs and expenses of the preservation, maintenance and administration of the trust property, with the " . . . net rents, revenues, dividends, interest and income from said trust property . . ." to be paid to the widow during her lifetime. Upon the death of the widow, the surviving trustees, Robert and Edward, were directed to " . . . pay over and deliver to . . ." the seven children, " . . . share and share alike, all of the trust property remaining in their hands . . ."

In her petition, plaintiff, Helen, alleged that her brother, Robert, one of the trustees, had " . . . taken complete control of the trust . . . to the exclusion of the other trustees . . ." and that Robert had been guilty of " . . . mismanagement, self-dealing, and bad faith and therefore should be immediately removed . . . ." Plaintiff also alleged that her mother, Enedina, and brother, Edward, the other two trustees, " . . . by their inaction in permitting . . . Robert . . . to assume complete control of the trust and in failing to render accurate, verified, audited accountings, have shown themselves unfit to continue as trustees . . . ."

The petition alleged that in January, 1970, Robert, one of the trustees, and his brother, John, had purchased a tract of land in San Antonio for a consideration of $10,523, taking title in their own names, and that some seven months later, in July, 1970, such trustee, Robert, and his brother, John, attempted to sell such land to the trust estate for a consideration of $20,000, " . . . or a profit of nearly $10,000.00 . . . ." Plaintiff further alleged that had she not discovered this " . . . attempted self-dealing . . ." the sale would have been consummated and the trustee, Robert, would " . . . have realized a net profit to the detriment of his trust."

Plaintiff prayed that (1) Robert be removed as trustee and that a substitute trustee be appointed; (2) that the other trustees, her mother and brother, Edward, be removed as trustees or be required to give good and sufficient bonds; and (3) the court order a complete and independent audit of " . . . all of the activities of the estate of Edward Howard Yturri, Deceased, and the trust created under his Last Will and Testament . . . ."

The trial court granted defendants' motion for summary judgment, which was based on the pleadings, depositions and attached affidavits. Plaintiff did not controvert the motion for summary judgment.

It is undisputed that in January, 1970, the trustee, Robert, and with his brother, John, purchased, in their own names, a

tract of land for which they paid, out of their own funds, $11,000. However, the purchase price included some personal property, and it appears that the amount paid for the land was $10,523. In July, 1970, Robert and John went to a title company and asked that the necessary papers be prepared to transfer title to the land to the "Estate of Edward Howard Yturri, Deceased," for $20,000. Robert, the trustee, took a check from the checkbook of an account maintained in the Alamo National Bank under the name of "Estate of Edward Howard Yturri, Deceased." Apparently, this check had been signed by one of the other trustees, that is, Enedina, the mother of plaintiff and Robert, and all that was required was the signature of another trustee. It was apparently Robert's plan to fill out the check for the amount of the purchase price and sign it, thus supplying the second signature required on the check. Plaintiff, according to her deposition, became suspicious, especially when Robert refused to furnish her with details of the transaction, and protested to the closing agent at the title company. She also telephoned the third trustee, Edward, who, at that time, lived in Corpus Christi. Edward had no knowledge of Robert's plans. Because of plaintiff's protest, the title company insisted that, before the deal could be closed, the other two trustees sign a letter approving the purchase of the property from the other trustee, Robert. Edward refused to approve because, according to his deposition, he had no information concerning the amount which Robert and John had paid for the property seven months previously. As a result of Edward's refusal to sign the letter of approval, the sale was not consummated. Robert and John paid all the expenses which had been incurred.

■ Defendants contend that since, as a result of plaintiff's protest and the refusal of Edward to give his approval, in writing, of the transaction, the sale of the land to the estate was never consummated, it must be concluded as a matter of law that Rob-

ert, the trustee, was not guilty of a breach of his fiduciary duties. We know of no authority which supports the contention that a fiduciary's attempt at self-dealing is purified because his scheme was discovered and frustrated.

■ Defendants insist that, although the subject property was, according to the plan of Robert and John, to be transferred to the estate of the decedent, the purchase price was to be paid by money on deposit in the Alamo National Bank which was the sole property of decedent's widow under the terms of the trust. Therefore, defendants conclude, even if the sale had been consummated, the corpus of the estate would not have been affected.

Under the provisions of the will, as pointed out above, the " . . . net rents, revenues, dividends, interest and income from said trust property . . . " was to be paid to the widow, Enedina Holland Yturri, during her lifetime. The evidence shows that all income from the property was placed in bank accounts, including the account at the Alamo National Bank. This apparently included income from property which was no part of the estate of the deceased.

Under the terms of the will, only the "net income" becomes the property of the widow. That is, she is to receive only the revenue remaining after the costs and expenses of the preservation, maintenance and administration of the trust property have been paid from the gross income. In her deposition, plaintiff stated that the real property and improvements were not being kept in a reasonable state of repair, and that the trustees did not keep proper accounts. There is, under the entire record, a question of fact as to whether or not all of the money in the Alamo National Bank account, from which the consideration for the purchase of the property from Robert and John was to be paid, consisted entirely of the " . . . *net* rents, revenues, dividends, interest and income from said trust property . . . " (emphasis added) so

**812**

that it can be considered, as a matter of law, as being the separate money of the widow.

 Because of the comingling of funds, it cannot be said that defendants established, as a matter of law, that no money belonging to the trust estate, as distinguished from the net revenue yielded by the estate, was to be paid to the trustee, Robert, for the property which he attempted to convey to the estate. While Robert's deposition contains evidence to the effect that, had the transaction been consummated, he would have realized no profit, since the reasonable cash market value of the property was not less than the contemplated purchase price, $20,000, this is merely opinion evidence which does no more than raise a fact issue as to value. That is, such evidence does not establish any material fact as a matter of law. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex. 1970); Broussard v. Moon, 431 S.W.2d 534 (Tex.1968).

In view of these circumstances, and the further fact that plaintiff's deposition contains evidence that the trust property was not kept in a proper state of repair and that Robert charged against the trust income the expense of managing property in Mexico which was not a part of the trust estate and failed to keep accurate accounts, we cannot say that the summary judgment record shows the absence of any material fact issue on the question of the breach by Robert, and by his co-trustees, of their fiduciary duties.

Defendants assert that plaintiff, who has no interest in the net income from the trust and is merely a remainderman as to the corpus, lacks sufficient interest to enable her to maintain the present suit. We do not agree. If funds which should have been applied to the preservation of the property in which plaintiff had an interest were being diverted to other purposes, the injury to her interest is clear. She is clearly a person "actually interested" within the meaning of the provisions of the Texas Trust Act relating to removal of trustees. Article 7425b–39, Vernon's Tex.Rev.Civ.Stat.Ann.

The judgment of the trial court is reversed and the cause is remanded.