Affirmed and Majority and Concurring Opinion filed July 10, 2007








Affirmed and Majority and
Concurring Opinion filed July 10, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00677-CV

____________

 

CAROLYN ANN LESIKAR MOON,
Individually and as Named Trustee of the CAROLYN ANN LESIKAR MOON SPECIAL TRUST, Appellant

 

V.

 

WOODY K. LESIKAR, Individually, as
Trustee of the WOODROW V. LESIKAR FAMILY TRUST, Trustee of the WOODY K. LESIKAR
SPECIAL TRUST, and Independent Executor of the ESTATE OF WOODROW V. LESIKAR;
WEST HOUSTON AIRPORT CORPORATION; SHELLY ANN LESIKAR, Individually and as
Trustee of the S&S TRUST; STACY JAYNE LESIKAR MARTIN, Individually and as
Trustee of the S&S TRUST; and the S&S TRUST, Appellees

 



 

On Appeal from the 149th
District Court

Brazoria County, Texas

Trial Court Cause No. 33,207

 



 

C O N C U R R I N G   O P I N I O N








I agree with much of the reasoning of the cases on which
the majority relies, but those cases are more suited to an analysis of standing
under the common law rather than a determination of standing conferred by
statute.  Here, we need not look outside the Texas Trust Code to determine
whether Carolyn has statutory standing.  Thus, although I agree with the
majority=s disposition of
the case, as a threshold matter I would hold that Carolyn has standing to bring
her claims under the Texas Trust Code.  I would therefore reach the same result
as that stated by the majority only after considering Carolyn=s claims on the
merits.  Accordingly, I concur in the result reached by the majority, but write
separately on the merits of Carolyn=s ten issues. 

I.  Standing

Standing may be predicated on statutory or common-law
authority.  See Williams v. Lara, 52 S.W.3d 171, 178B79 (Tex. 2001); Everett
v. TK-Taito, L.L.C., 178 S.W.3d 844, 850 (Tex. App.CFort Worth 2005,
no pet.).  When standing has been statutorily conferred, the statute itself
serves as the proper framework for a standing analysis.  Everett, 178
S.W.3d at 851; In re Sullivan, 157 S.W.3d 911, 915 (Tex. App.CHouston [14th
Dist.] 2005, orig. proceeding).

Applying the statutory framework, the majority notes that
Carolyn, Awould appear to meet the definition of an interested
person with standing to bring suit against a trustee for breach of fiduciary
duty.@  I agree. 
Although the majority then looks to the common law of other jurisdictions and
finds an exception to the standing conferred by the Texas Trust Code, I would
confine the analysis to the provisions of relevant statutes.  See In re
Sullivan, 157 S.W.3d at 920 (holding that the Texas Family Code confers
standing on a purported sperm donor to maintain suit adjudicating parentage and
stating that A[u]nless and until the Texas Legislature amends the
Texas Family Code to achieve the result [relator] urges, there is no basis to
deny standing@).  








AThe determination of whether a plaintiff possesses standing
to assert a particular claim depends on the facts pleaded and the cause of
action asserted.@  Mazon Assocs., Inc. v. Comerica Bank, 195 S.W.3d 800,
803 (Tex. App.CDallas 2006, no pet.).  Texas courts have historically
recognized a distinction between the analysis employed in reviewing common-law
and statutory standing.  See Williams, 52 S.W.3d at 178 (AAs a general rule
of Texas law, to have standing, unless it is conferred by statute, a
plaintiff must demonstrate that he or she possesses an interest in a conflict .
. . such that the defendant=s actions have caused the plaintiff some
particular injury.@) (emphasis added); In re Sullivan,
157 S.W.3d at 915 (A[T]he judge-made criteria regarding
standing do not apply when the Texas Legislature has conferred standing through
a statute.@).  Because Carolyn claims standing under the Texas
Trust Code, Athe analysis is a straight statutory construction of
the relevant statute to determine upon whom the Texas Legislature conferred
standing and whether the claimant in question falls in that category.@  In re
Sullivan, 157 S.W.3d at 915.  

Under the relevant terms of the Trust Code, I would
conclude that Carolyn is an interested person entitled to bring suit.  See Tex. Prop. Code Ann. '' 111.004(2),(6),(7),(25),
114.008, 115.001, 115.011 (Vernon 2007).[1] 
Accordingly, I would sustain Carolyn=s tenth issue and
address her nine remaining issues on the merits.

II.  Trust in Effect at the Time of the Stock
Sale








In her third and fourth issues, Carolyn argues that the
1997 Amended Family Trust was in effect at the time the Airport Stock was sold,
or in the alternative, that there are genuine issues of material fact
concerning which Family Trust instrument was in effect at the time of the
sale.  Although Carolyn correctly points out that there is a question of fact
regarding the date the stock was sold, I would hold that this is not a material
fact, considering the similarity of the key terms of the two agreements.  Under
both trusts, the settlor has the right to revoke or modify the trust upon
written notice, and the trustee is authorized Ato enter into any
transaction on behalf of the trusts despite the fact that another party to the
transaction is (I) a trust of which a Trustee of these trusts is also a
trustee, . . . [or] (iii) a Trustee or any one or more of the beneficiaries
acting on their own behalf . . . .@[2]  In light of the
similarity of these key provisions addressing the rights of the settlors and
the trustees, I would overrule Carolyn=s third and fourth
issues.

III.  Woody=s Alleged Breach
of Duty to Carolyn

In her first issue, Carolyn argues that the trial court
erred in denying her motion for summary judgment because no competent evidence
proved that Woody=s purchase of the Airport Stock was fair. 
Similarly, she argues in her second issue that the trial court erred in
granting the Lesikar Defendants=[3] counter-motion
for interlocutory summary judgment because Woody=s alleged
self-dealing in purchasing the Airport Stock was not excused by exculpatory
language in the trust.  In her eighth issue, Carolyn contends that Woody had a
fiduciary obligation as co-trustee to avoid self-dealing transactions, Aeven if the Family
Trust was revocable and even if [the Settlor] participated in and directed
those transactions.@

This argument is rebutted by the terms of the trusts and of
the Trust Code.  As previously noted, Article VII, section 7.1(h) of each trust
permits such Aself-dealing.@  Moreover, at the
time the summary judgment motions were filed, heard, and decided, the Texas
Trust Code provided as follows:








If a trust instrument reserves or
vests authority in any person to the exclusion of the trustee, including the
settlor . . . to direct the making or retention of an
investment or to perform any other act in the management or administration of
the trust, the excluded trustee or cotrustee is not liable for a loss resulting
from the exercise of the authority in regard to the investments, management, or
administration of the trust.

Tex. Prop. Code Ann. ' 114.003 (Vernon
1995).[4] 
As amended, the statute now provides:[5]

(a)     The terms of a trust may give a trustee or
other person a power to direct the modification or termination of the trust.

(b)     If the terms of a trust give a person the
power to direct certain actions of the trustee, the trustee shall act in
accordance with the person=s direction unless:

(1)     the direction is manifestly contrary to the
terms of the trust; or

(2)     the trustee knows the direction would
constitute a serious breach of a fiduciary duty that the person holding the
power to direct owes to the beneficiaries of the trust.

(c)     A person, other than a beneficiary, who
holds a power to direct is presumptively a fiduciary required to act in good
faith with regard to the purposes of the trust and the interests of the
beneficiaries.  The holder of a power to direct is liable for any loss that
results from a breach of the person=s fiduciary duty.

Tex. Prop. Code Ann. ' 114.003 (Vernon
2007).[6] 
A>[T]erms of the
trust= means the
manifestation of intention of the settlor with respect to the trust expressed
in a manner that admits of its proof in judicial proceedings.@  Id. ' 111.004(15).








Here, each of the trusts reserved to the settlor the power
to modify or revoke the trust, in whole or in part, and Carolyn does not argue
that Mr. Lesikar=s decision was the result of coercion,
undue influence, lack of capacity, or was otherwise involuntary.  To the
contrary, Carolyn essentially complains that Woody violated his fiduciary duty
to her by failing to influence her father to abandon his intent to
transfer the Airport Stock to him.  She contends that, as a trustee, Woody has
a fiduciary duty to the contingent beneficiaries, and must therefore prevent
the co-trustee from removing property from the trust or transferring former
trust property to him.  In effect, she argues that, in his capacity as a
trustee, Woody=s duty to her as a contingent beneficiary trumps his
duty to fulfill the expressed intent of the settlor. 

But this argument elevates the rights of a beneficiary
above the rights of the settlor.  Here, the settlor is also a trustee; thus,
under the fiduciary duties that Carolyn suggests, the settlor would share the
same duty to prevent the removal of trust property.  See id. ' 114.006. 
Thus, the settlor could revoke the trust only by breaching his duty to every
beneficiary, contingent beneficiary, and remainderman who held an interest,
however attenuated, in the trust property.  Under this interpretation, the
trust would no longer be freely revocable.  Because a fiduciary must also place
the interests of the one to whom a duty is owed above his own interests, it
would seem that the settlor, in his capacity as trustee, would have a duty to
prevent himself, in his capacity as settlor, from revoking the trust. 
This result is inconsistent with the Trust Code and the terms of the trust
documents.  Id. ' 112.051(a) (AA settlor may
revoke the trust unless it is irrevocable by the express terms of the
instrument creating it or of an instrument modifying it.@).








I would hold that Woody=s cooperation in
the stock purchase was in accordance with the direction of his father, who was
empowered to direct his actions.  Moreover, Woody=s purchase of the
stock was not manifestly contrary to the terms of the trust, but complied with
the intent of Mr. Lesikar as demonstrated not only in the written terms of the
trust, but in the written stock transfer and the endorsed check.  See Haldeman
v. Openheimer, 119 S.W. 1158, 1162 (Tex. Civ. App. 1909), aff=d as modified, 103 Tex. 275,
126 S.W. 566 (1910).[7]
In arguing the contrary, Carolyn relies on authorities that speak generally of
the duties a trustee owes to a remainderman or to a contingent beneficiary, but
that do not adequately reconcile the exculpatory terms of the trust, the rights
of the settlor, the rights of other beneficiaries, and the trustee=s obligation to
comply with the lawful directions of the settlor:     In construing a trust,
the whole instrument creating or declaring the trust must be considered, in
order to determine the settlor=s intent, and not merely any particular
provision, part, clause, or phrase by itself, and consideration should not be
given merely to disjoined parts.  All parts, provisions, or terms of the
instrument are to be considered, each paragraph provision, or phrase must be
read in the light of the whole instrument, and not in isolation, and no clause
is to be given undue preference.  The meaning of a part of a provision must be
determined from the provision as a whole.

Brown
v. Scherck, 393 S.W.2d 172, 183 (Tex. Civ. App.CCorpus Christi
1965, no writ) (quoting 90 C.J.S. Trusts ' 161, p. 22B23).  

Under the terms of
each of the trusts, Mr. Lesikar manifested an intent to exercise control over
the trust property during his lifetime.  Indeed, the following language
concerning a testamentary trust is largely applicable to Mr. Lesikar=s rights as
settlor:








[Testatrix], as
the owner of the property in question, had the absolute right to dispose of
it . . . as she saw fit, and to put upon the title or the
use of the property such limitations as she deemed proper, not in violation of
law nor against public policy.  [Her] daughter[] had only such interest in the
property as her mother conferred upon her, and it is not for the courts to say
that the limitation created by the trust is unreasonable or unjust, if it be
lawful.  Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504; Claflin v.
Claflin, 149 Mass. 19, 20 N. E. 454, 3 L. R. A. 370, 14 Am. St. Rep. 393. 
In the latter case, the court said: AA testator has a
right to dispose of his own property with such restrictions and limitations,
not repugnant to law, as he sees fit, and his intentions ought to be carried
out, unless they contravene some positive rule of law, or are against public
policy.@ 

Lanius v. Fletcher, 100 Tex. 550,
555, 101 S.W. 1076, 1078 (1907).  Like the testatrix described a hundred years
ago in Lanius, Mr. Lesikar, as the settlor, had the right to dispose of
his property as he saw fit, and the trustee=s primary duty
under the terms of the trust at issue was to carry out the settlor=s lawful
intentions.  Here, the settlor=s manifest intent was to transfer the
Airport Stock out of the trust.[8]

But Carolyn argues
that her father had the right to revoke the Family Trust only if he did so in
writing and in his capacity as settlor, rather than as trustee.  She contends
that until such a writing was received by a trustee, her father and brother
owed her fiduciary duties.  For the reasons discussed below and in the majority=s discussion of Starcrest
Trust v. Berry,[9]
I would hold that Mr. Lesikar was not required to provide the written notice
Carolyn suggests.

IV.  Requirements for the Sale of the Airport Stock

In her seventh
issue, Carolyn contends that the Airport Defendants failed to differentiate
between actions by Mr. Lesikar in his capacity as Settlor and in his capacity
as Trustee.  In her ninth issue, Carolyn contends that the transfer of the
Airport Stock did not meet the requirements of an amendment or revocation of
the Family Trust.  According to her interpretation of the trusts, Mr. Lesikar
could not transfer the Airport Stock to Woody unless he first removed the
Airport Stock from the trust by writing a notice of the revocation, in his
capacity as Settlor, and delivering the notice to Woody or to himself, in their
capacities as trustees.  








I do not read the
trusts to impose such a requirement.  Mr. Lesikar could combine the removal of
the stock from the trust with the transfer of his stock to Woody, to Woody=s children, or to
a trust for either of them.  Simply stated, Mr. Lesikar (as Settlor) could
direct 

himself (as
trustee) to make the transfer directly on behalf of the Settlor.  See
Art. II, ' 2.1 of Trust (ATrustee may
distribute to or apply for the benefit of Settlor=s children . . .
such amounts of trust, income and/or principal as Settlor shall direct in
writing.@); see also Tex. Prop. Code Ann. ' 113.002 (AExcept as provided
by Section 113.001, a trustee may exercise any powers in addition to the powers
authorized by this subchapter that are necessary or appropriate to carry out
the purposes of the trust.@); id. ' 113.024 (AThe powers,
duties, and responsibilities under this subtitle do not exclude other implied
powers, duties, or responsibilities that are not inconsistent with this
subtitle.@).  I would therefore overrule Carolyn=s first, second,
seventh, eighth, and ninth issues.

V.  Limitations

In her fifth and
sixth issues, Carolyn contends that the Lesikar Defendants= limitations
defense fails as a matter of law, or alternatively, there are material fact
issues concerning the Lesikar Defendants= limitations
defense.  Because I would affirm the trial court=s order on other
grounds, I would not reach these issues.

VI.  Conclusion

I agree with the
majority=s conclusion that Mr.
Lesikar could and did remove the Airport Stock from the trust corpus without
writing and delivering notice to himself; moreover, I agree with the majority
that it would be absurd to read the trust documents to impose such a
requirement.  I further agree that Carolyn=s complaints
regarding the sale of the Airport Stock are without merit because the evidence
manifests Mr. Lesikar=s intent to sell the stock to Woody for
$2,000, and Mr. Lesikar had the right and the unchallenged capacity to do so. 
However, I would hold that this evidence, while important in evaluating 

 

 

 








the merits of the
arguments, does not undermine Carolyn=s standing under
the Texas Trust Code.

 

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Majority Opinion and Concurring Opinion filed July 10, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.  (Hudson, J. Majority)









[1]  I disagree with the majority=s conclusion that Carolyn had no interest in the
Airport Stock under the 1990 Family Trust.  Carolyn was a contingent
beneficiary, and the stock would pass to her if Woody died without living
descendants.  Under the terms of the Texas Trust Code, this contingent interest
is sufficient to confer standing.  See Tex.
Prop. Code Ann. '' 111.004(2), (6), (7); In re Estate of Bivins,
No. 07-01-0131-CV, 2002 WL 1478661, *1 (Tex. App.CAmarillo July 10, 2002, no pet.) (not designated for publication)
(holding that a contingent beneficiary of a trust has a justiciable interest
and standing to prosecute the suit).  Carolyn also has standing as a
remainderman under the 1997 Amended Family Trust.  See Yturri v. Yturri,
504 S.W.2d 809, 812 (Tex. Civ. App.CSan
Antonio 1973, no writ) (holding that a remainderman as to the corpus of a trust
Ais clearly a person >actually interested=@ and has
standing to maintain suit under the predecessor to the Texas Trust Code).





[2]  1990 Family Trust, Art. VII, ' 7.1(h); 1997 Amended Family Trust, Art. VII, ' 7.1(h).





[3]  Carolyn defines the ALesikar Defendants@ as her brother
Woody, individually and as trustee of the Woodrow V. Lesikar Family Trust, as
trustee of the Woody K. Lesikar Special Trust, and as independent  executor of
the Estate of Woodrow V. Lesikar.





[4]  Amended by Act of May 12, 2005, 79th Leg.,
R.S., ch. 148, ' 19, 2005 Tex. Gen. Laws 287, 293, effective Jan. 1,
2006.





[5]  The terms of both trusts include any amendments to
the Texas Trust Code.





[6]  Section 31 of Acts 2005, 79th Leg., ch. 148
provides:

(a)        Except as otherwise provided by a will, the
terms of a trust, or this Act, the changes in law made by this Act apply to:

(1)        a trust existing or created on
or after January 1, 2006;

(2)        the estate of a decedent who
dies before January 1, 2006, if the probate or administration of the estate is
pending on or after January 1, 2006; and

(3)        the estate of a decedent who dies on or after January 1,
2006.





[7]  AIt is true that
the appellants, though only with a remote and contingent interest, may be
allowed to object to a wasteful or extravagant administration of the trust, or
to a disposition of the property not provided for in the will or allowed by
law; but the fact that their future interest may be affected by a sale of the
property or a change in its form would afford no just ground of complaint, if
such change or sale was authorized by the will, or to accomplish a purpose either
expressly or impliedly provided for by its terms.@





[8]  The majority states that Mr. Lesikar wrote to
Carolyn explaining his decision.  But Carolyn contests the authenticity of the
September 5, 1997 letter that was purportedly written by her father, and this
dispute was not resolved in the trial court.  In light of this continuing disagreement,
I respectfully disagree with the majority=s
characterization of this document as a letter from Mr. Lesikar; however, the
letter is not necessary to the resolution of the issues presented on appeal.   





[9]  926 S.W.2d 343, 352B53 (Tex. App.CAustin 1996, no writ).