

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00066-CV

_____

IN RE:   VANESSA MARIE REED

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Vanessa Marie Reed, mother of the children involved, has filed a petition for writ of mandamus asking this Court to order the trial judge to set aside an order overruling her plea to the jurisdiction and to dismiss with prejudice the petition for conservatorship filed by the children's grandfather and his wife. In her plea to the jurisdiction, Reed argues that the trial court had no subject-matter jurisdiction because the opposing parties lacked standing to file a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. §§ 102.003–.004 (West 2008).

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy. *In re Team Rocket*, *L.P.*, 256 S.W.3d 257 (Tex. 2008) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for the trial court. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2005) (orig. proceeding). The relator must establish that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Standing is a prerequisite to subject-matter jurisdiction, which is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A party may challenge the absence of subject-matter jurisdiction by a plea to the jurisdiction and by other procedural vehicles. *Id.* at 554. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat the alleged claims, without regard to whether they have merit. *Id.* The

2

purpose of a dilatory plea is not to force a plaintiff to preview its case on the merits, but to establish a reason why the merits of its case should never be reached. *Id.* The Texas Supreme Court has emphasized that a court should not decide standing issues based on its views of the merits:

> In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent.

*County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (citations omitted). The court should confine itself to the evidence relevant to the jurisdictional issue. *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

Section 102.003(a)(9) of the Texas Family Code provides in relevant part that an original suit may be filed by a person "who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). The statute further states:

> (b) In computing the time necessary for standing under Subsections (a)(9), (11), and (12), the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit.

TEX. FAM. CODE ANN. § 102.003(b). The court found that the grandfather and his wife had standing because the children had been "in the continuous possession of the Petitioners in excess of six months prior to filing this petition, and the children's present circumstances with Respondent would significantly impair the children's physical health or emotional development."

3

In the petition by the children's grandfather and his wife, it was alleged that the children had been in their continuous possession for over six months and that their present circumstances would significantly impair the children's physical health or emotional development. They support the petition with an affidavit stating that Reed (respondent/relator) was addicted to alcohol and various controlled substances and that she has been physically abusive to the children. They further stated in the affidavit that they had observed Reed and her boyfriend, Dan Light, while they believed both to be under the influence of alcohol or drugs, driving with the children in the vehicle.

The petition was signed April 8, 2011,[1] an answer was filed, and the court conducted an evidentiary hearing on April 21. The court issued its order denying the plea to the jurisdiction on May 4, 2011.

At the evidentiary hearing, the grandfather testified that Reed had lived with Light in the house next door for about six months, and before that Reed and the two children had lived in his house. He testified that even after Reed moved next door, the children stayed with him and his wife, that one girl spent a lot of time at his house overnight, and that the other one only occasionally spent the night at Reed's house. He testified Reed had a job out of town and that the children stayed with them, with either a grandparent or Reed taking them to school and a grandparent picking them up. He testified that he and his spouse had been providing for these two

---

[1]The copies provided were certified by the district clerk as being part of the file in this case, but the documents were not file-marked by the clerk when received.

grandchildren—providing care, food, clothing, and shelter—and that they had control over the children for the last six months continuously.

Reed testified that the children had a room in her house and that they had lived with her the last six months. She testified that she and the children began living with her father in July 2009, and did so through March 2010. By the time of the hearing, Reed had been living in a separate house, next door to her father and stepmother, for approximately thirteen months.

Cristy Brown, a Child Protective Services worker who was working with Reed testified that she had been working with her since 2006, but no details about the nature of the contact were elicited.

The court concluded that the grandparents, though they did not have exclusive control over the children, had at least fifty percent of the control, and denied Reed's plea to the jurisdiction.

The pleadings and evidence elicited in the hearing held to determine standing do not show exclusive possession of the children by the petitioners. They both show, however, that the children spent an extraordinary amount of time with the petitioners, and that the petitioners exercised a high degree of care and control of the children.

The statute does not require exclusive possession. The question is whether the court abused its discretion by determining that the petitioners had sufficient care, control, and possession of the children over the past six months to have standing to bring this suit. The pleadings and evidence are such that we cannot conclude that the trial court could reasonably have reached only

one conclusion; thus, we will not invade the trial court's determination on these factual matters. *See In re M.P.B.*, 257 S.W.3d 804 (Tex. App.—Dallas 2008, no pet.) (child lived with grandmother for three months, then moved to nearby apartment with mother; afterward, child spent significant time with grandmother—every weekend, holidays, spent more time with grandmother than at mother's apartment; grandmother was significantly involved in raising child and as much or more caregiver than mother—held to establish standing).

In addition, under Section 102.004(a)(1) of the Texas Family Code, the grandfather may have standing to bring suit if there is satisfactory proof that "(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 102.004(a)(1).

If sufficient proof is shown, this would authorize standing by the grandfather. The affidavit of the grandfather and his wife states facts that would support such a conclusion. Counsel questioned Reed at length, eliciting testimony that since 2005, she had pending criminal charges in Georgia of cruelty to children in the second degree. Reed acknowledged that she and Light were living together (with his thirteen-year-old son), but stated that she had not seen Light abuse the children, although she had seen him hit his dog (Light picked up the dog's chain and "popped" her). Photographs of the children taken by the grandfather's wife were introduced, showing what appeared to be bruises and whelps across the face of one child and the legs of

another. There was also evidence about the condition of the mother's house, which was described as filthy.

The mother testified that things had improved since the photographs were taken. She acknowledged that she had formerly used methamphetamine, but stated that she had not done so for more than eight years. When asked if she had an explanation for the apparent bruising of the children, she had none. She also testified that she did not leave the girls alone with Light because his daughter had claimed that something bad had happened, and Reed wanted to avoid allowing a situation where her own daughters could make such claims—and also to keep her stepmother from complaining about it. She denied that a child had been thrown into bed by the hair by Light—she did not believe that it had happened.

The grandfather testified that his nine-year-old son had told him the bruises on one girl may have resulted "from when Dan Light picked the baby up by the arm and the leg and threw her in her bed because she would not stop crying." The grandfather also testified that he saw Light pulling his dog off a pig, picking it up with the collar and hitting it with his fist in the head. He testified that he had concluded that the children had been abused because of statements made by the children (the two at bar, and three others). He also stated that in the ten days before the hearing that the children had been with them, the mother had made no effort to contact the children.

We have reviewed the pleadings and the evidence introduced that is pertinent to the jurisdictional inquiry. *Blue*, 34 S.W.3d at 554–55. In so doing, we have confined ourselves to

7

the evidence relevant to the jurisdictional issue. *Sullivan*, 157 S.W.3d at 915. We cannot find that the trial court clearly abused its discretion.

We deny the petition for writ of mandamus.


                                        Jack Carter
                                        Justice


Date Submitted:      August 3, 2011
Date Decided:        August 4, 2011